1
2
3
4
5
6
7

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

8
9

10    SHARON L. ELLIOT,                          CASE NO. C19-563 MJP

11                          Plaintiff,           ORDER GRANTING
                                                 DEFENDANT'S MOTION FOR
12         v.                                    SUMMARY JUDGMENT

13    BNSF RAILWAY COMPANY,

14                          Defendant.

15

16         This matter comes before the Court on Defendant's Motion for Summary Judgment.

17    (Dkt. No. 29.)  Having reviewed the Motion, the Response (Dkt. No. 38), the Reply (Dkt. No.

18    44), and all related papers, the Court GRANTS the Motion.

19                                        **Background**

20         On April 15, 2019, Plaintiff filed this lawsuit on behalf of her deceased husband, George

21    Elliot, alleging that during his career working for Defendant, BNSF Railway Company ("BNSF"), he

22    was exposed to toxic substances, including diesel, benzene, creosote, herbicides, and asbestos, that

23    contributed to his death from non-Hodgkin's lymphoma.  (Dkt. No. 1.)  Plaintiff now brings claims

24

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 1

against BNSF under the Federal Employers Liability Act ("FELA") and the Locomotive Inspection Act ("LIA").  (Id.)

In support of her allegations, Plaintiff testified that Mr. Elliot often smelled like "diesel or oil" when he came home from work, and perhaps as a result, "hated the smell of diesel . . . wouldn't even buy a diesel pickup because he hated diesel."  (Dkt. No. 39, Declaration of Shawn A. Ricci, Ex. 1 at 33:21-24, 37:9-11.)  But Plaintiff could not remember a time when Mr. Elliot complained about diesel exhaust at work and he "seemed fine" when he came home each day.  (Id. at 31:20-23, 34:3-5, 36:7-37:3.)  Plaintiff also could not remember Mr. Elliot's doctors ever discussing the cause of Mr. Elliot's cancer, and neither Plaintiff nor Mr. Elliot ever asked.  (Id. at 53:13-18, 54:5-8, 56:23-57:1, 57:25-58:4.)

Several of Mr. Elliot's coworkers testified that they were exposed to diesel exhaust (Id., Ex. 2 at 37:18-39:1, 41:2-5; Ex. 3 at 16:22-17:6; Ex. 4 at 53:11-54:2), and never received any safety training or information about how it could be a health hazard (Id., Ex. 2 at 34:1-4; Ex. 3 at 48:3-10; Ex. 4 at 57:4-10).  One of Mr. Elliot's coworkers, Gene Potocnik, testified that he was exposed to a black substance that he believed was coke dust and "pitch binder that fell out of the cars" and that Mr. Elliot, working the same jobs, must have also been exposed.  (Id., Ex. 2 at 23:2-12.)  Mr. Potocnik further testified that after a chest x-ray early in his career: "the guy insinuated that I must be a smoker because of the looks of my lungs; and I wasn't.  And I attributed that to the diesel that I was breathing while working on these trains."  (Id., Ex. 2 at 34:21-25.)  But none of Mr. Elliot's coworkers could recall whether Mr. Elliot had received medical treatment for symptoms associated with diesel exposure (Id., Ex. 2 at 25:20-24; Ex. 4 at 40:16-25), whether he ever mentioned having those symptoms (Id., Ex. 2 at 25:25-26:21; Ex. 3 at 17:17-18:4; Ex. 4 at 41:1-7), or complained about exposure to a supervisor (Id., Ex. 2 at 26:22-25; Ex. 3 at 18:7-10, 23:18-25; Ex. 4 at 38:13-15).

1

In addition to her own testimony and the testimony of Mr. Elliot's coworkers, Plaintiff also

2

relies on the testimony of Dr. Ernest P. Chiodo, who submitted a report concluding that Mr. Elliot's

3

exposure to diesel exhaust and benzene during his career caused his non-Hodgkin's lymphoma.  (Id.,

4

Ex. 5 at 6.)  In fact, Plaintiff answered each of Defendant's interrogatories by stating, "Plaintiff will

5

respond by way of expert testimony."  (Dkt. No. 30, Declaration of Anthony M. Nicastro, ("Nicastro

6

Decl."), Ex. A.)

7

However, on March 13, 2020, after Plaintiff submitted her Response, the Court granted

8

Defendant's Motion to Strike Dr. Chiodo's testimony as untimely.  (Dkt. No. 51.)  Plaintiff had

9

missed her deadline, producing Dr. Chiodo's expert report weeks late and only after Plaintiff filed the

10

instant Motion for Summary Judgment.  (Ricci Decl., ¶ 6, Ex. 5.)  This was despite a warning from

11

the Court that such behavior could result in sanctions after Plaintiff's previous failures to comply

12

with discovery deadlines.  (Dkt. No. 31 at 12:12-13:3.)  In granting Defendant's Motion to Strike, the

13

Court found that the untimeliness of Plaintiff's report was neither substantially justified nor harmless.

14

(Dkt. No. 51.)  Plaintiff's Motion for Reconsideration of that Order was also denied.  (Dkt. No. 59.)

15

Defendant now moves for summary judgment, arguing that Plaintiff cannot establish causation

16

without expert testimony.

**Discussion**

17

Summary judgment is proper if the pleadings, depositions, answers to interrogatories,

18

admissions on file, and affidavits show that there is no genuine issue of material fact and that the

19

moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c).  The movant bears

20

the initial burden to demonstrate the absence of a genuine dispute of material fact.  Celotex Corp.

21

v. Catrett, 477 U.S. 317, 323 (1986).  A genuine dispute over a material fact exists if there is

22

sufficient evidence for a reasonable jury to return a verdict for the non-movant.  Anderson v.

23

Liberty Lobby, Inc., 477 U.S. 242, 253 (1986).  On a motion for summary judgment, "[t]he

24

1   evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his

2   favor." Id. at 255.  But Conclusory, nonspecific statements in affidavits are not sufficient, and

3   missing facts will not be presumed.  Lujan v. Nat'l Wildlife Fed'n, 497 U.S. 871, 888-89 (1990).

4            Defendant seeks summary judgment on Plaintiff's claims, arguing that without any expert

5   witness testimony, Plaintiff cannot prove causation, even under the relaxed standards of the

6   Federal Employers Liability Act and the Locomotive Inspection Act.  (Dkt. No. 29.)  "Under

7   FELA, the jury should determine liability so long as the evidence justifies 'with reason, the

8   conclusion that employer negligence played any part, even the slightest, in producing the

9   injury.'"  Claar v. Burlington N. R. Co., 29 F.3d 499, 503 (9th Cir. 1994) (quoting Rogers v.

10  Missouri Pacific R.R. Co., 352 U.S. 500, 507 (1957)).  "This does not mean, however, that

11  FELA plaintiffs need make no showing of causation."  Claar, 29 F.3d at 503.  "It means only that

12  in FELA cases the negligence of the defendant 'need not be the sole cause or whole cause' of the

13  plaintiff's injuries."  Id.  The LIA supplements the FELA.  Keenan v. BNSF Ry. Co., No. C07-

14  130BHS, 2008 WL 2434107, at *3 (W.D. Wash. June 12, 2008).  "The failure to comply with

15  LIA standards constitutes negligence per se under the FELA."  Id.  To establish negligence as a

16  matter of law, a plaintiff must show that (1) a defendant violated a provision of the LIA, and (2)

17  such violation caused that plaintiff's injuries.  Lochridge v. City of Tacoma, No. C09-5010BHS,

18  2010 WL 1433412, at *4 (W.D. Wash. Apr. 8, 2010).

19           Here, neither of Plaintiffs' claims, brought under the FELA and the LIA, survive

20  summary judgment.  Plaintiff argues she can prove causation "on the basis of Plaintiff's

21  Decedent's coworker testimony and the expert testimony of Dr. Chiodo."  (Dkt. No. 38 at 19.)

22  Because Dr. Chiodo's testimony was stricken, the Court evaluates Plaintiff's claims solely upon

23  the testimony of Plaintiff's fact witnesses.

24

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 4

1    The extent of Plaintiff's testimony regarding Mr. Elliot's toxic substances exposure was

2    that he often smelled of "diesel or oil" when he came home from work, and that he "hated the

3    smell of diesel." (Ricci Decl., Ex. 1 at 33:21-24, 37:9-11.)  Further, one of Mr. Elliot's

4    coworkers testified that Mr. Elliot was likely exposed to a black substance that he believed was

5    coke dust and "pitch binder that fell out of the cars." (Id., Ex. 2 at 23:2-12.)  But none of Mr.

6    Elliot's doctors told him that his lymphoma was caused by toxic exposure (Id., Ex. 1 at 53:13-18,

7    54:5-8, 56:23-57:1, 57:25-58:4), and no one remembered whether he had received medical

8    treatment for symptoms associated with diesel exposure (Id., Ex. 2 at 25:20-24; Ex. 4 at

9    40:16-25), whether he mentioned having those symptoms (Id., Ex. 2 at 25:25-26:21; Ex. 3 at

10   17:17-18:4; Ex. 4 at 41:1-7), or complained about exposure to a supervisor (Id., Ex. 2 at

11   26:22-25; Ex. 3 at 18:7-10, 23:18-25; Ex. 4 at 38:13-15).  And Plaintiff testified that Mr. Elliot

12   "seemed fine" when he came home each day. (Id., Ex. 1 at 31:20-23, 34:3-5, 36:7-37:3.)

13   Plaintiff's evidence does not provide even the barest link between Mr. Elliot's possible toxic

14   exposure and his lymphoma.

15   Plaintiff relies on Gallick v. Baltimore & O. R. Co., 372 U.S. 108, 109 (1963), for the

16   proposition that "[w]here there is any evidence from which a jury can conclude that a railroad is

17   in any way negligent, and that such negligence played any part in causing or aggravating

18   Plaintiff's condition, then the case must be given to the jury." (Dkt. No. 38 at 17.)  But in

19   Gallick v. Baltimore & O. R. Co., 372 U.S. 108, 109 (1963), where the plaintiff developed

20   severe complications from a bug bite, he knew his infection was caused by the bug that fell out

21   of his trouser leg immediately after he was bitten, leaving no question about how he was injured,

22   only whether the extent of his injury was foreseeable.

23

24

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 5

1    In a case similar to this one, <u>Claar</u>, 29 F.3d at 504, where the plaintiffs had no expert

2    witness testimony to support allegations that their injuries were caused by toxic chemical

3    exposure, the Ninth Circuit found that lay jurors were not qualified to determine causation.

4    Distinguishing <u>Gallick</u>, where there was "at least some evidence that the plaintiff's injuries might

5    have been caused by the railroad's negligence," the court found that that it was insufficient for

6    plaintiffs to allege they were "exposed to some chemicals that can cause some of the injuries []

7    complain[ed] of."  <u>Id.</u>

8    Here, the extent of Plaintiff's evidence is that Mr. Elliot was likely exposed to diesel and

9    possibly coke dust, but there is no evidence regarding the amount of exposure, or evidence of the

10   effect of any exposure on Mr. Elliot.  As in <u>Claar</u>, Plaintiff, "not having proffered any admissible

11   expert testimony, [has] no evidence that workplace exposure to chemicals played any part, no

12   matter how small, in causing [Mr. Elliot's] injuries."  <u>Id.</u>; <u>see also</u> <u>Schrum v. Burlington N. &</u>

13   <u>Santa Fe Ry. Co.</u>, No. CIV. 04-619 PHXRCB, 2006 WL 1371634, at *6 (D. Ariz. May 17,

14   2006), <u>on reconsideration sub nom.</u> <u>Schrum v. Burlington N. Santa Fe Ry. Co.</u>, No. CIV 04-619-

15   PHX-RCB, 2007 WL 1526717 (D. Ariz. May 23, 2007), <u>and aff'd</u>, 286 F. App'x 380 (9th Cir.

16   2008) (finding that in the absence of expert opinion, a lay juror would not have the "specialized

17   expertise" that is necessary to determine whether exposure to a toxic substance aggravated the

18   plaintiff's medical condition).  Indeed, Plaintiff admitted as much when she explained that

19   should Dr. Chiodo's testimony be excluded, "[t]he exclusion will be tantamount to a dismissal of

20   Plaintiff's FELA action."  (Dkt. No. 36 at 7.)  The Court finds that Plaintiff has failed to put forth

21   evidence of causation that would allow a reasonable jury to return a verdict in her favor.

22   //

23   //

24

1

## Conclusion

2          Finding that Plaintiff has failed to establish causation, the Court GRANTS Defendant's

3    Motion for Summary Judgment.

4

5

6          The clerk is ordered to provide copies of this order to all counsel.

7          Dated April 21, 2020.

8

9          _____

10         Marsha J. Pechman
           Senior United States District Judge

11

12

13

14

15

16

17

18

19

20

21

22

23

24